UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

James Murphy                                )
                                            )
          Plaintiff,                        )
                                            )
v.                                          )          No. 17 CV 50198
                                            )          Magistrate Judge Iain D. Johnston
Nancy A. Berryhill, Acting                  )
Commissioner of Social Security,            )
                                            )
          Defendant.                        )


## REPORT AND RECOMMENDATION

Plaintiff James Murphy, a 62-year old former salesman in the rechargeable battery field, filed for disability benefits in 2014, alleging that he was disabled based on series of chronic physical problems emerging over the last years of his working life.[1] These include heart problems (primarily atrial flutter), mini-strokes, back pain from degenerative disc disease, chronic obstructive pulmonary disease, sleep apnea, damaged vocal chords caused by spinal surgery, obesity (he has weighed up to 330 pounds), and other conditions.[2] The administrative law judge ("ALJ") found that plaintiff could still do sedentary work despite these problems, and specifically could return to his past jobs as a salesman and sales manager. A key part of the analysis was sorting through four opinions from treating physicians, who mostly supported plaintiff's claim. However, the ALJ relied on the one doctor out of the four who opined that plaintiff could do sedentary work. Plaintiff raises several arguments for remand, but the main argument is that the ALJ's analysis of these opinions was flawed. After just the initial reading of

---

[1] According to his FICA earnings summary, plaintiff has been working consistently since at least 1978 and up until 2012 (earnings of $60,000) and some in 2013 ($15,000). R. 196.
[2] His list of impairments is somewhat atypical in that it includes no mental impairments.

1

the ALJ's decision and the parties' briefs, it was clear to this Court that remand is required. In fact, the Government probably should have agreed to a remand given the weaknesses of its counter-arguments, which chiefly consist of a "harmless error" rescue operation. Despite this initial impression – or perhaps because of it – the Court engaged in its standard operating procedure and dove into the administrative record before issuing this Report and Recommendation.

The four doctors are Dr. Pradeep Maheshwari (electrophysiologist); Dr. Sanjeev Gupta (internist); Dr. Holly S. Carobene (pain management specialist); and Dr. Azmey Matarieh (cardiologist). They were all treating physicians, and they all completed a similar "Medical Source Statement" form in the 2015-16 timeframe. These forms cover a range of issues, and ask doctors to make predictive judgments about a claimant's abilities in a future workplace. Doctors, for example, must estimate the number of minutes a claimant can stand, and how many breaks a claimant must take including specifically how many minutes each break will last. Many questions provide a menu of pre-set answers, but some include blank lines allowing for a handwritten explanation, albeit an abbreviated one.

For purposes of this appeal, it is helpful to start with the bottom-line conclusions. Three of the four doctors (Gupta, Carobene, and Matarieh) opined that plaintiff had limitations that would prevent him from working at even a low stress job. In addition, they also agreed that he suffered from specific limitations in sitting, standing, walking, grasping and handling objects, and attending work regularly (among other things). But within this broad consensus, there was also some variation. For example, although they all agreed that plaintiff had concentration problems, they varied in how often these would occur. *See* R. 788 (Dr. Carobene: "often (up to 50% of the day"); R. 777 (Dr. Gupta: "frequently (up to 75% of the day)"); R. 801 (Dr.

Matarieh: he checked both the boxes for frequently and constantly (100%) and wrote "depending on the day"). Still, overall, there is no doubt that these three opinions supported plaintiff's argument that he should be found disabled.

The one doctor who reached a contrary bottom-line conclusion was Dr. Maheshwari, the electrophysiologist. Although he agreed that plaintiff had various limitations that would limit the scope of his ability to work, Dr. Maheshwari found that plaintiff could do sedentary work in a low stress job. R. 809. The ALJ gave this opinion "substantial weight," which for practical purposes meant "controlling weight," and rejected the opinions of the other three doctors.

Plaintiff generally argues that this analysis was insufficient. But, before considering this broader argument, the Court will address plaintiff's first and more narrow argument, which by itself warrants a remand. Plaintiff argues that the ALJ overlooked one portion of Dr. Maheshwari's opinion that actually supports plaintiff being found disabled under one of the listings. There are two primary pathways for being found disabled. First, a claimant may meet the technical requirements of a listing at step three. The purpose of the listings is to "streamline[] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). In this sense, listings are pre-packaged, one-size-fits-all judgments that a person is disabled if specific and usually technical requirements are met. Second, a claimant may also be found disabled at steps four and five under the residual functional capacity ("RFC") analysis, which is a more wide-ranging, considering all the impairments together in relation to the requirements of specific job types.

Relevant to the listings argument, Dr. Maheshwari gave the following answer on his Cardiac Medical Source Statement:

3

C. _____ ✓ **Recurrent arrhythmias**, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (4.05).

R. 812. The text portion was pre-printed on the form, and is a mostly direct quotation of the requirements of Listing 4.05 (recurrent arrhythmias).[3] All that Dr. Maheshwari added was the checkmark, but this was potentially a big checkmark because it indicated that he believed plaintiff met the requirements of Listing 4.05.

Plaintiff argues that the ALJ failed to consider this part of Dr. Maheshwari's opinion. This Court agrees. The ALJ's analysis consisted solely of the following:

> The claimant does not meet or medically equal listing 4.05, as there is no evidence of *recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled , recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope.*

R. 22 (emphasis added).[4] This analysis makes no reference to Dr. Maheshwari's contrary finding quoted above. Nor did the ALJ acknowledge that Dr. Matarieh also indicated, on the same form, that he believed plaintiff met this listing as well as another cardiology listing (4.11). *See* R. 804-05. Moreover, later in the decision, the ALJ basically adopted Dr. Maheshwari's opinion without qualification. The ALJ did not give that opinion a mixed verdict, for example adopting it in part and rejecting it in part, which is what you would expect if the ALJ had decided to reject the doctor's listing answer. For these reasons, it seems clear that the ALJ simply overlooked this

---

[3] Section 4 contains the listings for the adult cardiovascular system.
[4] The italicized portion is merely a quotation, albeit without quotation marks, of Listing 4.05.

evidence.[5] The Government makes a passing attempt to argue that the ALJ in fact considered and rejected this evidence *implicitly*. But it is not reasonable to assume the ALJ rejected the opinion of two treating physicians in such an offhand manner and do so based on a layperson analysis. In sum, the ALJ's listing analysis failed to address a significant and contrary line of evidence. *See Thomas v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).[6]

The Government's other argument, one that is slightly better but still unavailing, is that the ALJ's error was harmless. The Government relies on several answers on Dr. Maheshwari's Cardiac Medical Source Statement supposedly showing that the doctor found that plaintiff's limitations were relatively mild. For example, the Government notes that Dr. Maheshwari "gave plaintiff the American Heart Association Classification rating of II," which according to the Government "indicat[es] slight limitation of physical activity." Dkt. #10 at 4.  The Government also notes that Dr. Maheshwari answered the question about concentration by checking the "seldom" category (defined on the form as occurring "up to 25% of the day"). The problem with this argument is that these observations are not correlated to the specific requirements of Listing 4.05, which include several technical concepts, such as "electrolyte abnormalities" and "ambulatory (Holter) electrocardiography." The Government does not discuss these requirements. Therefore, for this Court to adopt the Government's argument, it would basically have to dig through the record and independently find evidence to show that two treating physicians, both of whom were cardiology specialists, were clearly wrong in concluding that

---

[5] In fairness to the ALJ, plaintiff's counsel did not highlight this argument during the administrative proceedings. At the hearing, counsel gave an opening statement, but did not refer to this argument. R. 44. Counsel likewise did not mention it in the appeal letter submitted to the Appeals Council. *See* R. 360-365.

[6] Separately, the ALJ's one-sentence analysis could be criticized simply for being conclusory. *See, e.g., Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015) (two-sentence discussion contained "no analysis whatsoever" and was "the very type of perfunctory analysis we have repeatedly found inadequate.").

plaintiff met the numerous technical requirements of this listing. This is too steep a hill for the harmless error doctrine to climb.[7]

But even if the Court were to somehow find the above error was harmless, the Court would still recommend remanding because the ALJ's broader analysis was spotty and cherrypicked. Although the ALJ purported to be applying the factors under the treating physician rule, the ALJ did so incompletely and selectively.[8] More specifically, the ALJ did not apply the same level of scrutiny to all four opinions.

On the one hand, the ALJ uncritically adopted Dr. Maheshwari's opinion based on the following boilerplate analysis: "I give Dr. Maheshwari's opinion substantial weight, as he is the treating source, specialized in electrophysiology and has [a] longitudinal treating relationship with the claimant and his opinion is consistent with his treatment notes and the medical evidence of record." R. 30. On the other hand, the ALJ scrutinized the other three opinions and criticized them for reasons that could equally apply to Dr. Maheshwari's opinion. The ALJ's two main criticisms were that these three doctors "gave no explanation" for their answers and that they allegedly were "internally inconsistent" in their answers. As a preliminary matter, the evidence supporting these two criticisms is razor thin. It is not strictly true that these doctors gave no explanation. For example, question #6 on the General Medical Source Statement asked Dr. Gupta to identify "clinical findings and objective signs" supporting his diagnoses. R. 777. Four blank lines were provided. Dr. Gupta answered as follows: "Abnormal blood tests," "Abnormal

---

[7] At bottom, the Government's argument seems to be that Dr. Maheshwari's finding that plaintiff could do sedentary work was at odds with his earlier finding that plaintiff met the requirements of listing 4.05. The Court agrees that there is some inherent tension in these two findings, but this is an issue that should have been acknowledged and tackled head-on by the ALJ.

[8] The factors are: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

MRI," "Abnormal sleep studies," "Abnormal BMI," and "Abnormal [range of motion] of back." *Id.* As for the alleged inconsistencies, the ALJ only cited to a few minor examples, which border on nitpicking.[9]

The bigger problem with the two criticisms is that they also could have been applied to Dr. Maheshwari's opinion. He provided a similar level of detail in his answers. His answers consist of short handwritten phrases that were no longer than the answers given by the three doctors. As for internal contradictions, the ALJ apparently found none, but a question exists as to whether the ALJ could have found some if he had combed through his answers in the same way he did for the other three opinions. For example, Dr. Maheshwari answered one question by indicating that plaintiff was capable of doing "low stress jobs" but then later stated that it was "unknown" whether he could even do part-time work. R. 809. To be clear, the Court is not indicating that this was a significant contradiction, merely that it is on the same level as those used to discredit the other opinions. As this Court has noted, it is important that ALJs employ the "same metrics" and the "same level of rigor" in evaluating multiple opinions. *Vandiver v. Colvin*, 2015 WL 8013554, *3 (N.D. Ill. Dec. 7, 2015) ("the checklist has its greatest usefulness as a tool for making an apples-to-apples comparison between opinions.").

Another example of inconsistent standards being applied is the ALJ's decision to give Dr. Maheshwari's opinion weight because he had a "longitudinal treating relationship" with plaintiff. However, the ALJ gave *no credit* to the other three doctors even though they also had treating relationships with plaintiff—in fact, two of them had *much longer* relationships. Dr. Maheshwari

---

[9] For example, the ALJ noted that Dr. Gupta "opined that the claimant could stand less than 5 minutes, but then inconsistently opined that he needed to alternate every 15 to 20 minutes." R. 29. It is not clear to this Court that these answers were inconsistent because the question about needing to alternate positions referred to sitting, standing, and walking. R. 780. In any event, this is a minor inconsistency, and not a sufficient reason to simply disregard the entire opinion.

began treating plaintiff in May 2012; whereas, Dr. Gupta began treating him in 2000 (twelve years earlier) and Dr. Carobene began treating him in 2003 (nine years earlier). R. 808, 777, 787.

Relatedly, in considering the nature of these differing treatment relationships (checklist factor #2), the ALJ failed to consider the possible blind-men-touching-the-elephant scenario. Like many disability claimants, plaintiff saw various specialists who focused on and treated only one particular ailment out of the many plaintiff had. Dr. Maheshwari, an electrophysiologist, treated plaintiff's atrial flutter problems. Therefore, it is unclear whether he would have fully appreciated the full scope of plaintiff's other problems, including his back pain. In contrast, Dr. Gupta was the primary care physician who presumably was in a better position to know about all the problems and to assess their cumulative effect. The ALJ gave no consideration to this possibility when placing such great weight on Dr. Maheshwari's opinion as against all the others.

Yet another factor not fully considered is consistency. *See Yarolem v. Berryhill*, 2018 WL 4030592, *5 (N.D. Ill. August 23, 2018) ("Consistency is a central principle embodied in the treating physician rule"). The ALJ asserted as one reason for adopting Dr. Maheshwari's opinion was that it was consistent with the "medical evidence of record," which is a proper factor. But the ALJ did not cite to any evidence to support this naked conclusion. The ALJ should have provided a greater explanation especially given that the three other doctors were basically in agreement about plaintiff's condition—in short, Dr. Maheshwari's opinion was the outlier, the one *not* consistent with the others. The Court is not suggesting that the side with the greater number of supporting opinions should always prevail, but it is nonetheless a factor to be considered. In sum, the ALJ's analysis under the treating physician rule was too one-sided, thus providing a second reason for a remand.

8

Having concluded that a remand is required, the Court need not analyze plaintiff's three remaining arguments. Plaintiff argues that the ALJ failed to include limitations for plaintiff's damaged vocal chords and his periodic diarrhea and that the ALJ failed to consider that plaintiff's past relevant jobs were "composite jobs" with no counterpart in the Dictionary of Occupational Titles. The Government has admitted that the ALJ failed to address some of these issues. For example, the Government acknowledges that the ALJ did not explicitly consider "plaintiff's vocal cords," but argues that any error is harmless. Dkt. #10 at 8. As for the analysis of plaintiff's past relevant work, the Government agrees that "it seems likely that a transcription or typographical error occurred" in one part of the analysis. *Id.* at 9. These errors are further reasons to remand this case. Given the decision to remand, the Court does not believe that it would be worthwhile to further sort through these remaining arguments here. On remand, plaintiff's counsel should flag these issues for the ALJ to ensure that they are fully addressed. Plaintiff's counsel should also raise these issues when questioning plaintiff and the vocational expert and any medical expert that is called. The Court strongly urges the ALJ to call a medical expert to help resolve the competing medical opinions.

For these reasons, the Court recommends that plaintiff's motion for summary judgment be granted, the government's motion be denied, and the case be remanded. Any objections to this Magistrate Judge's Report and Recommendation must be filed with the District Court Judge by December 12, 2018. Failure to file objections by this date shall constitute waiver of subsequent review absent a showing of good cause for such failure. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Date:  November 28, 2018

By:  _____
Iain D. Johnston
United States Magistrate Judge

9